# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 5, 2015

Lyle W. Cayce
Clerk

No. 14-10306

JAMES CLIFFORD SPENCE, also known as James Spence,

Plaintiff-Appellant,

v.

WALLACE NELSON, Chaplain III, Region VI, also known as Wallace Nelson, III; SHABAZZ, Chaplain; BILL PIERCE, Director of Chaplaincy; TERESA CAMACHO, Mailroom Supervisor, also known as Camacho,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:10-CV-95

Before KING, DAVIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant James Clifford Spence, Texas prisoner # 712697, proceeding pro se and in forma pauperis, appeals the district court's final judgment granting the defendants' motion for summary judgment and dismissing Spence's claims with prejudice, as well as the district court's

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

ordering denying his motion for leave to file an amended complaint. For the reasons set forth below, we AFFIRM.

## I.     FACTS AND PROCEEDINGS

Spence filed a civil rights complaint against the Mail System Coordinators Panel ("MSCP") of the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ"); the Director's Review Committee ("DRC"); Wallace Nelson, Chaplain III Region VI; Chaplain Akbar Shabazz; Bill Pierce, Director of Chaplaincy; and Teresa Camacho, French M. Robertson Unit Mailroom Supervisor. Spence, a Shia Muslim, alleged that the defendants instituted an unpublished mailroom policy that prohibited inmates from receiving religious literature from overseas sources, specifically Iran and the Middle East. According to Spence, the policy allowed mailrooms to consider any publication from Iran and the Middle East a package from an unverified source and prohibited access to such publications to inmates. Because prison officials provided no access to Shia religious teachers and the Islamic services were, at most, generic, Spence alleged that the policy substantially burdened the practice of his religion in violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). Spence also alleged that the policy violated his First Amendment right to free speech and deprived him of his Fourteenth Amendment right to due process of law. He sought injunctive and declaratory relief, as well as nominal and punitive damages. To the extent they were available, Spence also sought compensatory damages.

Spence's claims against the MSCP and DRC were dismissed because they were not legal entities under Federal Rule of Civil Procedure 17(b) and, thus, lacked the capacity to be sued. The remaining defendants filed a motion

for summary judgment alleging that there were no genuine issues of material fact and that they were entitled to a judgment as a matter of law because: (1) Spence failed to exhaust administrative remedies regarding his claim that prison officials provided no access to Shia services; (2) Spence was barred from seeking monetary damages under the RLUIPA and compensatory damages under the Free Exercise Clause; (3) Spence's request for injunctive relief was moot because the challenged policy was no longer in place and all withheld items had been delivered to him; (4) Spence could not show that the challenged policy substantially burdened the practice of his religion in violation of the RLUIPA; (5) Spence could not show that the challenged policy violated the Free Exercise Clause; and (6) the defendants were entitled to qualified immunity because Spence could not show a constitutional violation.

Spence filed a response to the defendants' motion and a cross motion for summary judgment alleging that there were no genuine issues of material fact and that he was entitled to a judgment as a matter of law on his 42 U.S.C. § 1983 and RLUIPA claims. He argued, inter alia, that the defendants were not entitled to qualified immunity because they violated his clearly established free speech and due process rights and their conduct was not objectively reasonable under the circumstances. Spence also filed an amended complaint seeking to add MSCP Program Supervisor Jennifer Smith, the TDCJ, the Texas Board of Criminal Justice ("TBCJ"), and unnamed MSCP and DRC members as defendants.

The district court granted the defendants' motion for summary judgment, denied Spence's cross motion for summary judgment, and dismissed Spence's complaint with prejudice. In doing so, the district court noted that the

additional defendants were not parties to the suit because Spence had not sought or received leave to file the amended complaint.

On appeal, this court held that the district court did not abuse its discretion in failing to consider Spence's amended complaint.[1] This court also affirmed the district court's grant of summary judgment as to all claims except Spence's § 1983 claims for nominal and punitive damages against the defendants in their individual capacities.[2] Specifically, this court determined that, on the record before the court, genuine issues of material fact existed as to whether the challenged policy was applied neutrally and whether it was rationally related to security interests.[3] This court also determined that a genuine issue of material fact existed as to whether the defendants were entitled to qualified immunity.[4] Consequently, this court vacated the district court's grant of summary judgment on Spence's § 1983 claims for nominal and punitive damages and remanded the case to the district court for further proceedings.[5]

The district court ordered the defendants to file a supplemental motion for summary judgment addressing the remanded issues and claims. The defendants filed a motion for summary judgment arguing that Spence had failed to exhaust his administrative remedies because his "grievance failed to give TDCJ administrators a fair opportunity to address problems concerning the individuals who ultimately became defendants in this suit." The

---

[1] *Spence v. Nelson*, 533 F. App'x 368, 370 (5th Cir. 2013).

[2] *Id*. at 369-72.

[3] *Id*. at 372.

[4] *Id.*

[5] *Id.*

defendants also argued that they were entitled to qualified immunity because they did not create the challenged policy, the policy did not violate Spence's constitutional rights, and their actions were objectively reasonable in light of clearly established law.

Spence filed a reply to the defendants' motion, which included a motion for leave to engage in discovery. He also filed a motion for leave to file an amended complaint adding Smith, Smith's supervisor Tammy Shelby, and unnamed members of the MSCP and DRC as defendants. The district court denied Spence's motion for leave to amend his complaint. Spence filed a motion to alter or amend the district court's order, which the district court denied. Spence's motion for the appointment of counsel or, in the alternative, a guardian ad litem was also denied.

On February 18, 2014, the district court granted the defendants' supplemental motion for summary judgment and dismissed Spence's remaining claims with prejudice. The district court refused to consider the defendants' exhaustion argument noting that it had been raised for the first time in their supplemental motion for summary judgment. Nevertheless, the district court agreed that there were no genuine issues of material fact and that the defendants were entitled to qualified immunity because Spence failed to show that their actions were objectively unreasonable in light of clearly established law. Spence filed a motion to alter or amend the judgment, which the district court denied. He filed a timely notice of appeal, and the district court granted him leave to proceed IFP on appeal.

No. 14-10306

## II.    Analysis

### A.    The District Court Did Not Abuse Its Discretion When It Denied Spence's Motion for Leave to Amend His Complaint.

Spence contends the district court abused its discretion when it denied his motion for leave to amend his complaint. He notes that he attempted to sue the MSCP and DRC in his original complaint but, being a pro se litigant, he was unaware that they lacked the capacity to be sued. Further, because the challenged policy was unpublished, the identity of its author was unknown at the time he filed his original complaint. According to Spence, he should have been allowed to add Smith, as well as Shelby and the "faceless/nameless" MSCP and DRC members "who surely should shoulder some of the supervisory liability [for] fail[ing] to train and supervise . . . Smith."

Federal Rule of Civil Procedure 15(a)(1) provides that a plaintiff may amend his complaint once as a matter of course within 21 days after serving it or 21 days after service of the defendant's answer or motion to dismiss.[6] In all other cases, the plaintiff may amend his complaint "only with the opposing party's written consent or the court's leave," although "[t]he court should freely give leave when justice so requires."[7]

This court reviews a district court's denial of a motion for leave to amend a complaint for abuse of discretion.[8] In determining whether to grant a motion to amend, a district court may consider whether the plaintiff unduly delayed raising the claim, whether the motion resulted from bad faith or a dilatory

---

[6] FED. R. CIV. P. 15(a)(1).
[7] FED. R. CIV. P. 15(a)(2).
[8] *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).

motive, whether the plaintiff had been given previous opportunities to cure deficiencies which he had failed to exercise, whether the defendants would suffer undue prejudice, and whether an amendment would be futile.[9] "In light of the presumption in favor of allowing pleading amendments, courts of appeals routinely hold that a district court's failure to provide an adequate explanation to support its denial of leave to amend justifies reversal."[10] However, the district court's failure to adequately explain its denial of leave to amend is "not fatal to affirmance if the record reflects ample and obvious grounds for denying leave to amend."[11]

In denying Spence's motion for leave to amend his complaint, the district court noted that this court had remanded only Spence's § 1983 claims for nominal and punitive damages against Nelson, Shabazz, Pierce, and Camacho in their individual capacities. The district court also noted that this court had found that it "did not abuse its discretion when it failed to consider [Spence's] previous attempt to amend his complaint to add the unnamed individual committee members."

Because we already held that the district court did not abuse its discretion in failing to consider the amended complaint because Spence had failed to request leave to file it,[12] the claims in his proposed amended complaint were not at issue on remand. Thus, we cannot say the district court abused its discretion in refusing to allow Spence to resurrect those rejected claims.

---

[9] *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005).

[10] *Marucci Sports, L.L.C*, 751 F.3d at 378 (internal quotation marks and citation omitted).

[11] *Id.* (internal quotation marks and citation omitted).

[12] *Spence*, 533 F. App'x at 370.

No. 14-10306

Moreover, given the late stage of the proceedings and the fact that we remanded to the district court to determine Spence's Section 1983 claims against the remaining defendants in their individual capacities, the record supports the denial of Spence's motion for leave to file an amended complaint adding new defendants.[13] Accordingly, we hold that the district court did not abuse its discretion in denying Spence's motion for leave to file an amended complaint.

## B. The Defendants Are Entitled to Judgment on Spence's First Amendment Claim.

Spence contends that the district court erred in granting judgment in favor of the defendants on his First Amendment claim. He argues that the mailroom policy prohibiting inmates from receiving packages from Iran violated his clearly established First Amendment right to free speech because it amounted to censorship of religious material, resulted in the denial of all Shia Islamic literature, and unfairly impacted Shia Muslim inmates. Spence disputes that the policy was rationally related to security interests, noting that: (1) he and others had been receiving hundreds of books from Iran for more than 10 years without incident; (2) the defendants had failed to identify a single case of radicalization in the TDCJ, much less one directly related to books from Iran; and (3) none of the banned books were written in Farsi. Even if some of the books had been written in Farsi, Spence argues that an absolute

---

[13] *See Boyd v. United States*, 861 F.2d 106, 108 (5th Cir. 1988) (noting that the district court may consider judicial economy when determining whether to grant or deny leave to amend); *Green v. Atkinson*, 442 F. App'x 915, 916 (5th Cir. 2011) (holding that the district court did not abuse its discretion in denying the plaintiff leave to amend to add new claims on remand).

8

ban on all books from Iran without making any effort to translate them was unconstitutional.

This court reviews a grant of summary judgment de novo, using the same standard as that employed by the district court.[14] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] If the moving party establishes this, the burden shifts to the nonmovant to set forth specific evidence to support his claims.[16] In reviewing summary judgment, this court construes "all facts and inferences in the light most favorable to the nonmoving party."[17] Summary judgment may not be thwarted "with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."[18] This court may affirm the district court's grant of summary judgment on any ground raised below and supported by the record.[19]

In this case, Spence alleges that the defendants instituted an unpublished mailroom policy which violated his First Amendment rights. In the previous appeal, the parties focused on whether or not the policy itself was unconstitutional. We concluded, based on the evidence then presented, that the material facts were sufficiently disputed to preclude summary judgment. On remand, the defendants not only submitted more evidence concerning

---

[14] *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011).

[15] FED. R. CIV. P. 56(a).

[16] *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).

[17] *Dillon*, 596 F.3d at 266 (internal quotation marks and citation omitted).

[18] *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)) (internal quotation marks removed).

[19] *Ballard v. Devon Energy Prod. Co., L.P.*, 678 F.3d 360, 365 (5th Cir. 2012).

whether the policy was constitutional but also submitted evidence that no defendant was a policymaker with respect to the mailroom policy at issue.

This latter point, which was not at issue in the previous appeal, is crucial because "[p]ersonal involvement is an essential element of a civil rights cause of action" against an official in his individual capacity.[20] The plaintiff "must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation."[21] Based on the summary judgment evidence, we must conclude that none of the defendants sued in his or her individual capacity in this case can be liable for the institution of the mailroom policy at issue because none was a policymaker.

The defendants have presented undisputed evidence that the policymaker was MSCP Program Supervisor Jennifer Smith, as well as evidence that the defendants neither created the challenged policy nor had any authority to formulate or alter mailroom policies. According to the defendants, Nelson had no communication with Smith concerning the challenged policy, Shabazz and Pierce merely relayed the FBI's concerns to Smith, and Camacho was simply enforcing the policy pursuant to Smith's instructions. The defendants argue that because the policy was issued by Smith, they had no reason to suspect that it was anything but properly issued. Further, given that the policy was borne of security concerns raised by the FBI, it was not facially suspect.

---

[20] *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

[21] *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012) (internal quotation marks and citation omitted).

Spence's conclusory allegations that the defendants were "policy supporters" and that they had a duty to investigate his complaints and correct a policy that violated the First Amendment are insufficient to raise a genuine dispute of material fact as to whether the defendants violated his constitutional rights.[22] It is undisputed that policymaking authority rested with Smith, not with any of these defendants, so they are entitled to judgment on Spence's First Amendment claim with respect to the mailroom policy at issue.

### C.    The Defendants Are Entitled to Judgment on Spence's Due Process Claim.

Spence contends that the defendants were not entitled to judgment on his Fourteenth Amendment due process claim. He argues that he had a constitutionally protected liberty interest in corresponding with those outside the prison system and that this right could not be infringed upon without due process of law. Specifically, Spence contends that the TDCJ's appellate process violated his due process rights because: (1) appeals were automatically prepared by the mailroom staff and inmates were not afforded an opportunity to present arguments as to why the packages should not have been denied; and (2) Smith was both the policymaker and a member of the DRC.

In his first appeal, Spence argued that genuine issues of material fact existed as to whether the challenged policy violated his Fourteenth Amendment right to due process of law.[23] Relying on the Supreme Court's

---

[22] *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (holding that conclusory allegations do not give rise to a constitutional violation).

[23] *Spence*, 533 F. App'x at 371.

11

decision in *Procunier v. Martinez,* 416 U.S. 396, 418 (1974), *overruled on other grounds by Thornburgh*, 490 U.S. at 413-14, this court explained that "a prisoner's right to correspond, grounded in the First Amendment, is plainly a liberty interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment."[24] Thus, this court observed, "the decision to censor or withhold delivery of inmate mail must be accompanied by minimum procedural safeguards."[25]

Although neither the defendants nor the district court specifically addressed Spence's due process claim on remand, Spence raised the issue in his response to the defendants' supplemental motion for summary judgment. We must conclude that the defendants are entitled to summary judgment on this claim as well.

As noted, this court may affirm the district court's grant of summary judgment on any ground raised below and supported by the record.[26]  As with the First Amendment claim, Spence must establish that the defendants were either personally involved in the alleged deprivation or that their wrongful actions were causally connected to the alleged deprivation.[27] Spence has submitted no evidence that the named defendants were personally involved in or causally connected to the TDCJ's appellate process. Therefore, Spence has failed to show that the defendants violated his Fourteenth Amendment due

[24] *Spence*, 533 F. App'x at 371 (internal quotation marks and citation omitted).
[25] *Id.* (internal quotation marks, brackets, and citation omitted).
[26] *Ballard*, 678 F.3d at 365.
[27] *See Jones*, 678 F.3d at 349.

No. 14-10306

process rights, and the defendants are entitled to summary judgment on that claim.[28]

### D.     Defendants' Administrative Exhaustion Claim Is Moot.

The defendants contend that the district court's judgment should be affirmed because Spence failed to exhaust his administrative remedies. Spence argues that the defendants failed to timely raise that issue. Because we affirm the grant of summary judgment on other bases, we need not reach the issue of exhaustion.

### III.   CONCLUSION

For the reasons set out above, we AFFIRM.

---

[28] *See Pearson*, 555 U.S. at 232; *Jones*, 678 F.3d at 349.