# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 18, 2012

Lyle W. Cayce
Clerk

No. 10-60941

CLIFTON H. JONES; JERRY DWAYNE NANCE,

Plaintiffs – Appellants

v.

LOWNDES COUNTY, MISSISSIPPI; LOWNDES COUNTY, MISSISSIPPI SHERIFF'S DEPARTMENT; IVAN BRYAN, in his Individual and Official Capacity; C.B. (Butch) HOWARD, Lowndes County, Mississippi Sheriff, in his Individual and Official Capacity,

Defendants – Appellees

Appeal from the United States District Court
for the Northern District of Mississippi (Eastern Division)

Before JOLLY, HIGGINBOTHAM and SOUTHWICK, Circuit Judges.
PATRICK E. HIGGINBOTHAM, Circuit Judge:

Clifton H. Jones and Jerry Dwayne Nance filed suit under 42 U.S.C. § 1983 in the United States District Court for the Northern District of Mississippi against Lowndes County, Lowndes County Sheriff's Department, Sheriff C.B. "Butch" Howard in his individual and official capacity, and Deputy Sheriff Ivan Bryan in his individual and official capacity. They complained they were detained for more than 48 hours without a determination of probable cause or an initial appearance, in violation of the Fourth, Fifth, Eighth, and Fourteenth

No. 10-60941

Amendments. Following discovery, the district court granted defendants' motion for summary judgment. We affirm.

## I.

On Saturday April 5, 2008 the Lowndes County Sheriff's Department received a 911 call reporting a suspicious person purchasing pseudoephedrine pills, a precursor to the manufacture of methamphetamine. Defendant-appellee Ivan Bryan, a deputy sheriff, responded to the call and arrested plaintiffs-appellants Clifton Jones and Jerry Dwayne Nance at 5:33 P.M. With no Justice Court judges on duty on Saturday evening or Sunday, a determination of probable cause by a neutral magistrate was not sought over the remainder of the weekend. On Monday morning Bryan was off-duty and working at a second job for a different employer. He returned to the police station after his shift ended, and attempted to schedule an appearance before a judge around 2:30 P.M. The chief judge had left for the day, however, and Bryan was told that no other judge was available.

The next morning Bryan appeared before a justice court judge who determined the arrests were justified by probable cause. The judge did not allow plaintiffs to make their initial appearance on the same day as the determination of probable cause, so Jones and Nance made their initial appearance on Wednesday and were released on bail. A grand jury subsequently indicted them for possession of precursors to the manufacture of methamphetamine.

## II.

We review a grant of summary judgment *de novo*.[1] Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[2] If that party shows that the

---

[1] *LeMaire v. Louisiana Dept. of Transp. and Dev.*, 480 F.3d 383, 386 (5th Cir. 2007).

[2] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing FED. R. CIV. P. 56(c)).

No. 10-60941

non-moving party presented insufficient evidence in support of its allegations,"the non-movant must come forward with specific facts showing a genuine factual issue for trial."[3]  Such facts must consist of more than "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."[4]  Finally, we "may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court."[5]

## III.

Jones and Nance appeal rejection of their Fourth Amendment claims, but do not challenge the district court's grant of summary judgment on their Fifth and Eighth Amendment claims.

The Supreme Court reaffirmed in *Gerstein v. Pugh* that a warrantless arrest supported by probable cause is constitutionally permissible.[6]  To continue to detain the suspect, the state must obtain "a fair and reliable determination of probable cause" by a neutral magistrate "promptly after arrest."[7] The Court elaborated on this in *County of Riverside v. McLaughlin*: "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*."[8]

---

[3] *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (internal quotation marks omitted) (citing FED. R. CIV. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[4] *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

[5] *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001).

[6] 420 U.S. 103, 113 (1975).

[7] *Id.* at 124–25.

[8] 500 U.S. 44, 56 (1991); *see also Powell v. Nevada*, 511 U.S. 79, 80 (1994) ("[P]rompt generally means within 48 hours of the warrantless arrest; absent extraordinary circumstances, a longer delay violates the Fourth Amendment.") (internal quotation marks omitted).

No. 10-60941

The overarching constraint upon the state imposed by the Fourth Amendment is its demand of reasonableness.  Applying this fundamental precept the Court provided the 48-hour mark, but cautioned that "we hesitate to announce that the Constitution compels a specific time limit."[9]  It observed that a determination of probable cause within 48 hours could still violate an arrestee's Fourth Amendment rights if delayed unreasonably, such as "for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake."[10]  This standard, however, accepts that police must "cope with the everyday problems of processing suspects through an overly burdened criminal justice system," including "delays in transporting arrested persons," "handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of the arrest, and other practical realities."[11]  That said, 48 hours is a significant marker.  If the determination of probable cause is delayed by more than 48 hours the burden shifts to the government, and its showing of reasonableness will, virtually by definition, demand "a bona fide emergency or other extraordinary circumstance," which does not include "intervening weekends" or efforts to "consolidate [additional] pre-trial proceedings."[12]  Thus, a plaintiff challenging a delay of less than 48 hours has the burden of proving it was unreasonable.  Beyond the 48-hour mark, the burden falls to the defense to show extraordinary circumstances.[13]

---

[9] *McLaughlin*, 500 U.S. at 56.

[10] *Id.*

[11] *Id.* at 55, 57.

[12] *Id.* at 57.

[13] *Id.*

No. 10-60941

It is undisputed that more than 48 hours lapsed before Jones and Nance received a determination of probable cause. They contend the defendants did not show this delay was justified by extraordinary circumstances and were not entitled to summary judgment. We do not reach the merits of this argument because Jones and Nance failed to show that any defendant is liable for the alleged deprivation of their Fourth Amendment rights.[14]

A Section 1983 claimant must "establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation."[15] If the defendant is a municipality or other body of local government, the alleged deprivation must be connected to "a governmental custom," "policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers."[16] Although municipalities are not vicariously liable for violations committed by their employees, they are liable whenever "their official policies cause their employees to violate another person's constitutional rights,"[17] and for actions taken by an official with "final policymaking authority" in that area.[18] "A supervisor is not personally liable for his subordinate's actions in which he had no involvement."[19]

---

[14] *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.")

[15] *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008).

[16] *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690–91 (1978) (internal quotation marks omitted).

[17] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988); *see also Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001).

[18] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Whether a person has such authority is determined by state law. *Id.*

[19] *James*, 535 F.3d at 373.

5

No. 10-60941

Jones and Nance identify only one policy they claim caused the deprivation of their Fourth Amendment rights. Sheriff Howard explained in an interrogatory response that "the general policy is a target to take the detainee to a Judge within 48 hours but no later than 72 hours and as soon as reasonably possible and without any unnecessary delay." This policy violates *McLaughlin*, Jones and Nance maintain, by allowing determinations of probable cause or initial appearances 48 hours after arrest. Plaintiffs ask too much of that decision. *McLaughlin* provides the 48-hour timeline as a useful benchmark, but does not hold that determinations of probable cause made after the lapse of 48 hours are always unreasonable. The policy in question, in accordance with *McLaughlin*, makes unreasonable delay the standard that officers should apply,[20] and provides the 48-hour timeline as a benchmark.[21] That the policy recognizes that determinations of probable cause may sometimes occur after the 48-hour benchmark does not, in of itself, violate *McLaughlin*, and has not been shown in this case to have been a moving force behind the delay. It therefore cannot serve as the basis for plaintiffs' Section 1983 claim.

No other policy or custom to which the alleged deprivation could be traced is identified by plaintiffs. Instead, Jones and Nance agree with defendants that the delay was due to the lack of available judges on Saturday evening, Sunday,

---

[20] *See Swinney v. State*, 829 So.2d 1225, 1231–32 (Miss. 2002) (holding that "unnecessary delay," as used in a state statute, was interchangeable with the "unreasonable delay" standard of *McLaughlin*).

[21] Appellants argue that *McLaughlin* requires a jurisdiction to schedule probable cause determinations and initial appearances "in no event later than 48 hours after arrest." *See* 500 U.S. at 57. This statement is taken out of context. *McLaughlin* used that language when discussing "[a] jurisdiction that chooses to offer combined proceedings," emphasizing that "[t]he fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance." *Id.* It does not appear from the record, and neither party has alleged, that the delay in this case was due to the jurisdiction's policy of combining pretrial proceedings.

and Monday afternoon.[22]   Defendants have repeatedly contended that the county, sheriff's department, sheriff, and deputy sheriff have no authority to set the judges' schedule.  They therefore cannot be held liable either for the judges' decision to be unavailable that weekend or that Monday afternoon, or for a judge's decision to refuse to conduct plaintiffs' determination of probable cause and initial appearance on the same day.  Plaintiffs do not contest this.  They do not allege, much less present evidence, that these judges were policymakers whose every decision is policy for which the county is liable, or that the county could and should have required the judges to be available at certain times. Because the judges' actions caused the complained-of delay and plaintiffs failed to show that defendants were liable for those judges' actions, summary judgment was appropriate.[23]

The Fourth Amendment allegations against Deputy Sheriff Ivan Bryan are also unavailing.  As the arresting officer, Bryan was responsible for ensuring the arrestees were promptly brought before a magistrate.[24]  He maintains that even if his actions are ultimately determined to have created unreasonable delay, he is entitled to qualified immunity.  We agree.

---

[22] Sheriff Howard, Bryan's superior, is not alleged to have been involved in, or even aware of, plaintiffs' arrests or detentions before this lawsuit was filed.  Plaintiffs have therefore failed to establish he could be held liable in his individual capacity.  *See James*, 535 F.3d at 373.

[23] Plaintiffs argue that county employees did not try hard enough to locate a judge on Sunday and Monday afternoon.  They give us no reason to believe this was the case, and an unsubstantiated assertion cannot defeat summary judgment.  *See TIG Ins. Co.*, 276 F.3d at 759.  They also claim the county should allow an officer other than the arresting officer to obtain a determination of probable cause. There is no evidence the county does not allow other officers to obtain determinations of probable cause when necessary.  Deputy Sheriff Bryan's failure to arrange for this is analyzed in our discussion of qualified immunity below.

[24] *See* Miss. Code Ann. § 99-3-17 ("Every person making an arrest shall take the offender before the proper officer without unnecessary delay for examination of his case.")

No. 10-60941

"Qualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right."[25] Once a defendant raises the defense of qualified immunity it becomes the plaintiffs' burden to show that it does not apply.[26] "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[27]

It is argued that Bryan should have made more effort to contact a judge over the weekend and on Monday afternoon. The record indicates that no judge made himself or herself available for determinations of probable cause at those times. That Bryan could have done more and forced or persuaded a judge to conduct the determination is, at best, speculative. Plaintiffs also contend Bryan should have made alternative arrangements to obtain a probable cause determination on Monday morning. It would not have been clear to a reasonable officer that he was required to do so, however. Bryan went to the police station immediately after his shift ended at his other place of employment in order to schedule an appearance before a judge, several hours within the 48-hour window. Bryan's testimony as the arresting officer was necessary to the determination of probable cause, and he had no way of knowing the county judges would choose to close their courtrooms early that Monday afternoon or that their doing so was unlawful. Under these circumstances, we cannot conclude a reasonable officer would have known he was required to make alternative arrangements such as skipping his Monday morning shift or preparing a written report to enable another officer to attend the probable cause

---

[25] *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003).

[26] *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005).

[27] *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009) (internal quotation marks and citation omitted).

No. 10-60941

determination in his place.    Bryan was therefore entitled to summary judgment.[28]

## IV.

Jones and Nance also challenge the rejection of their Fourteenth Amendment claims.

A pre-trial detainee may bring a Fourteenth Amendment due process claim in a Section 1983 action either "as an attack on a condition of confinement or as an episodic act or omission."[29] Jones and Nance base their claim on *Bell v. Wolfish*, a conditions of confinement case,[30] arguing that the delay in obtaining a probable cause determination and initial appearance violated their due process rights. Even if we assume the delay constituted a condition of confinement and a violation of due process, plaintiffs' claim must fail. As with their Fourth Amendment claims, they have made no showing that the alleged deprivation was caused by a policy, regulation, custom or policymaker of the county or sheriff's department, or by Sheriff Howard's actions. Nor have Jones and Nance overcome Bryan's defense of qualified immunity, as we have explained.

Jones and Nance also contend they suffered unconstitutional conditions of confinement because they were not allowed to make any phone calls to obtain legal representation. As the district court noted, however, the record indicates they had several opportunities to do so. Because plaintiffs failed to show a genuine issue of material fact on this issue, summary judgment was proper.

---

[28] Although the district court did not decide the claims against Bryan on the basis of qualified immunity, this argument was briefed by the parties below and on appeal.

[29] *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009) (citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644–45 (5th Cir. 1996) (en banc)) (internal quotation marks omitted).

[30] 441 U.S. 520, 536 (1979).

No. 10-60941

Plaintiffs' final argument is that their Fourteenth Amendment rights were violated by defendants' failure to follow two state statutes.

"[A]n alleged violation of a state statute does not give rise to a corresponding § 1983 violation, unless the right encompassed in the state statute is guaranteed under the United States Constitution."[31] Jones and Nance identify two Mississippi statutes they allege contain such a right: Miss. Code Ann. § 99-3-17 and Miss. Unif. Rule of Cir. and Cnty. Court Prac. 6.03.[32] These statutes provide, respectively, that "[e]very person making an arrest shall take the offender before the proper officer without unnecessary delay for examination of his case," and "[e]very person in custody shall be taken, without unnecessary delay and within 48 hours of arrest, before a judicial officer or other person authorized by statute for an initial appearance."

Even if we assume that these statutes created a protected liberty interest and that they were violated, plaintiffs' claim fails. The delay of which Jones and Nance complain was caused by the unavailability of the judges at the specific time of the arrests and by their unannounced early departure on Monday. As we have explained, such actions have not been shown to set a county policy and cannot be a basis for liability of the named defendants. Under state law, it was Bryan's responsibility to bring the plaintiffs before a judge in a timely manner. The record establishes a reasonable officer would not have believed that Bryan's actions in attempting to fulfill that obligation violated the plaintiffs' constitutional rights under clearly established law. Bryan is therefore entitled to qualified immunity.

---

[31] *Moore v. Marketplace Rest., Inc.*, 754 F.2d 1336, 1349 (7th Cir. 1985).

[32] Plaintiffs also identify a third statute, Miss. Code Ann. § 19-25-67. This statute does not create a protected liberty interest, however. Consequently, appellants cannot assert any Section 1983 Fourteenth Amendment claims based on its violation. *See Mendoza v. Bladgett*, 960 F.2d 1425, 1428–29 (9th Cir. 1992).

No. 10-60941

V.

We affirm the judgment of the district court.